Good morning, Your Honors. My name is Michael G. Woods and I represent the appellant and former county counsel Spencer Batchelder. We're here today to review the decision of the then magistrate judge, now district court judge, denial of our motion for summary judgment. And we believe the court erred really at all three levels in first of all determining that the plaintiff's conduct involved expressive conduct on a matter of public concern. It also erred in determining that that speech was constitutionally protected because it failed to apply the Pickering balance and also because the right was not clearly established. Now, since this court told us to be prepared to speak to the Fabiano decision and due to the limited time, I'm going to focus on the whether the right was clearly established. Is there a question? No, no. I was going to suggest that since that's the easiest of the three, you start with that so that we don't run out of time on qualified immunity. I will. Thank you, Judge Reinhardt. The Fabiano case, I believe, is on point. The similarities are striking. You had an attorney who basically was employed by entity suing another department of the entity represented by his boss. When his boss raised conflict of interest issues, he proceeded. They fired him. It's a little better for the plaintiff in that case than it is for Mr. Arkin because his conduct was actually Mr. Fabiano's conduct actually was in compliance with their internal policies. And the position he took was not adverse or in conflict with the other entity with whom his boss thought there was a conflict. Mr. Arkin, on the other hand, is completely different. He took a position decidedly adverse to the county in advising county employees on their claim against the county and seeking to negotiate a settlement on their behalf. What do we do with the ruling by the juvenile court judge that there was no conflict? Well, Judge Kelsey's, if you had an opportunity to review the transcript, it's clear that he didn't even consider any of the free speech issues. He didn't consider the qualified immunity issues. No, no. The question was what do you do with the ruling on the conflict? What does he address? He did not rule that there was a conflict. He ruled who the client was. The issue of conflict was never addressed by Judge Kelsey. And he admitted he hadn't even had the opportunity to review the transcript in making a decision and determined that CPS was the client, a clearly erroneous decision because of the conflict. Does that mean it's not binding or that it's just erroneous? I believe it's clearly not binding and it is erroneous. Why is it not binding? It's a state court decision which didn't fully discuss the issues which affected the magistrate judge's ruling on a separate legal issue of whether or not qualified immunity applied. And Judge Kelsey didn't even ---- I think Judge Silverman's question is, is it binding as to the question of whether or not there is a conflict? No, Your Honor. And the reason it isn't is because he never ruled on that issue. There is nothing in his ruling on whether or not there was a conflict. That was never addressed. Well, Your Honor, it seemed to me, I was just looking for the ruling, but as I recall, he did say there is no conflict. I don't have it here. He did not analyze the business of the court. Well, he may not have done much of a job of analyzing. We don't generally decide what effect you give to a decision based on how well it's reasoned. Well, keep in mind, Your Honor. But what he said here is, but this attorney is giving legal advice. Well, he says, I do not believe he's in conflict. I don't remember the context of that particular statement. Well, the context is ---- He did not analyze the labor code. He did not analyze the government code. Okay. Now you're saying he's wrong and he wasn't well reasoned. I don't think he addressed all the issues either, Your Honor. The question is, is it a ruling on an issue that has collateral estoppel effect? I do not believe it has collateral estoppel effect. That wasn't the very issue governing the qualified immunity analysis, i.e., whether there was a breach of the canon of ethics, whether there was a conflict of interest was not the basis for Judge Kelsey's decision. And he didn't consider the authority cited. It wasn't briefed. The free speech aspects were not briefed. What if he found that it was a conflict? Let's assume it was binding. Bear in mind that Judge Kelsey's decision was made after the county council attempted to fire Mr. Arkin. Let's be sure we're clear on the timing. It was made after some of the acts and before some of the others. The only remaining act after Judge Kelsey's finding was the county council's recommendation to the board of supervisors that it should revisit the contract because Mr. Arkin interpreted it differently. The trial court didn't interpret it the same way that Batchelder did. And so the county council suggested to the board, you need to revisit this. That is the only conduct which happened after Judge Kelsey's decision. Kennedy. Well, that's a little bit of an understatement of what that April 5th letter says. The first 90 percent of it has to do with rewriting the contract. And then there's a paragraph toward the end that pretty much says you better fire him and at the end of the 60 days get back the files and get rid of them. If I recall correctly, Your Honor, it recommended termination of the contract on 60 days' notice, which was the absolute right, and the board thereafter determined to renegotiate the contract, which it did. And so there isn't anything in Judge Kelsey's decision which would ---- Well, the recommendation is pass a minute order terminating the contract with Michael Arkin effective 60 days from now. Direct Mr. Arkin to cause all CPS case files to be delivered immediately upon the expiration of 60 days to the office of county council. And what happened is the board, and this goes to show another error that Judge O'Neill made, the causal connection. At that point, the board made a determination, no, we are not going to terminate the contract, we are going to renegotiate the contract. And the county council's office said you then have to deal with these irregularities. So there was no causal connection between anything that the county council did and what happened to Mr. Batchelder. And that leads to whether or not the rights, the free speech rights were clearly established. And as the case held in Fabiano, and I noted that it cited precedent for this holding because Pickering's constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered clearly established for purposes of this case. It cited precedent to the First Circuit and the Eighth Circuit, but it failed to cite to this Ninth Circuit, which has clearly made exactly the same ruling in the Moran case, 147 Fed Third at 847, because the underlying determination pursuant to a Pickering, whether a public employee's speech is constitutionally protected turns on a context-intensive case, a context-intensive case-by-case balancing analysis. The law regarding such claims will rarely, if ever, be sufficiently clearly established to preclude qualified immunity under Harlow and its progeny. This Court already has the rule in Fabiano. It's been followed consistently. In fact, in the Moran cases, the Ninth Circuit cited similar precedent in the First, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits. So we have a First Amendment case where the magistrate judge failed even balance, do the Pickering analysis, and then basically apply the general principle, free speech rights are well established, without doing the fact-intensive analysis that is required. I would like to reserve a minute, if I may, unless there's a question the Court  would like to ask. Thank you, counsel. Thank you. Thank you. Good morning. Ken Foley here for Mr. Arkin. I'd like to point out that in the record concerning an issue you had about what Judge Kelsey said on excerpts of record, page 242, lines 16 through 19, he specifically stated, I do not believe he's in conflict. That's what I read to counsel, exactly what that statement is. Mr. Foley, I guess I am perhaps alone amongst us, but I don't get what difference that makes. Well. I mean, because the question on qualified immunity isn't whether somebody screwed up a contract interpretation. And I would agree, but that was an issue that came up during the opening presentation. I just wanted to clarify. I understand, but I'm asking you why we should be concerned with it at all, because the qualified immunity question is whether, as a matter of clearly established constitutional law, what Batchelder did, a reasonably objective person similarly situated would have realized violated the First Amendment. And that's a legal question, and I addressed it in my brief. Look at the warning signs that Mr. Batchelder had. Well, yeah, but here's the real heart of it. As Fabriano said, as Moran said, as is just self-evident, when you've got a balancing test like Pickering, it is virtually impossible to know in advance how it's going to come out. You know, I disagree with that in this case. Take a look at the record here, which the court of appeal relied upon. First, you have a letter to county counsel suggesting that his termination of Mr. Arkin was precipitous and not well-founded. It is of interest to note that at that same hearing when Judge Kelsey said he didn't feel there was a conflict, county counsel also said they had already hired a replacement. There was no good faith effort involved here, even though my other claim for a First Amendment violation was tossed out. They had already replaced me. They had already replaced Mr. Arkin before they spoke to him. And then what happens? So I say, hey, I don't know if you're reading this right. Then Judge Kelsey says, hey, there's no conflict here. His client's CPS, and what you're doing here, he used the word smells. Now, whatever, if it doesn't mean anything. We don't know who he said smelled. I mean, it's equally possible to think that he thought it kind of was fishy to have a lawyer hired, paid by the county, turn code on the county. I mean, that's possible, too. But that's really beside the point. I mean, the point is whether when you've got a Pickering question, and here you've got a novel situation on top of the Pickering balance, because it's quite unusual to have a lawyer on retainer to the county, then represent, as a privately retained lawyer, represent the interests of county employees against the county. Well, I can understand if it was in the contract that this independent contractor could not take any cases adverse to the county. That was not in the contract. Well, no, it's not a question whether it's in the contract, which is what I'm saying is it's certainly not unreasonable for someone to believe that there's a problem with a lawyer who's representing the county, suing the county, or taking adverse positions for other clients against the county. It may be perfectly proper, but it's not unreasonable to believe that, nor is it clearly established generally that what we do have is a finding by a judge. Now, who says it's not a conflict. He may be right, he may be wrong, but the question is, is it unreasonable? The county counsel here believed that the judge was wrong and didn't believe he had to follow that decision. Now, even if he's mistaken as to the law, for qualified immunity purposes, why isn't that a reasonable position he took to say that there is a conflict and I don't understand that I am bound by what the State court judge said? I think there's multiple aspects to that answer. First of all, it's the nature of the disclosure. Having to do with sexual harassment and discrimination in the workplace. I would think, and I thought that's how the Alpha Energy Savers case out of the circuit said, when you get matters of that importance, that in this balancing test, when they are that significant. Kennedy, you're talking about whether it's protected in the first place. I'm talking about qualified immunity for taking action. Let's say the firearm, because he believed there was a conflict. If there was a conflict, he had a right to do what he did, didn't he? I don't think so. No, I said if there were a conflict. No. No. Even if there's a conflict? No. Because read the contract. The contract only gave Batchelder the authority to terminate without notice initially. Only gave him the authority to terminate without notice if Arkin was unable or unwilling to do his job. Not because of some extraneous political issue that may have come up. Would you agree with me that a lawyer wouldn't have a First Amendment right to, say, reveal a client confidence? Sure. Would you agree that a client, that a lawyer doesn't have a constitutional right not to engage in a conflict of interest? I would agree with that. So doesn't this all come down to whether he had a conflict of interest? Well, I actually don't think so, because I think that's a pretext. Keeping in mind... Well, let's assume he had a conflict. I mean, just for the sake of discussion, let's assume under California ethics rules, he had a conflict. All right. Assuming he had one, I probably wouldn't have written the first letter. Then he has no... We wouldn't be here today. Okay. Don't we have to decide whether he had a conflict? Well, I think it's been decided. I think the third DCA supported the trial court when county counsel did a writ to them and said, hey, we need to correct this situation. Now, suppose that counsel thought here that the denial of a writ doesn't mean that it's clearly established law, that it's just a denial of a writ means a discretionary exercise of the court's authority not to consider the case. Then I would say, why did they take the writ? If it wasn't going to be helpful in their analysis of what they could do, why bother doing it? I think the answer was done, as I mentioned in my brief, they weren't going to pay two county counsels. They had hired a replacement with no notice to Arkin, no public solicitation of a replacement, no putting the contract out to bid. They went behind the scenes and hired a replacement before they even told them they had a problem with them. Help me out. I'm sorry to be conceptually dense here. But this argument sounds to me as if we're talking about whether there was or was not a breach of the contract, which is a contracts question and not a question of constitutional law. So somehow you've got to get what happened into the arena of a First Amendment violation. And could I do that? So does that come from the fact that he was making a petition to the government as a lawyer and you're saying that's a protected First Amendment interest? Or does it come because he made a claim that had to do with sex harassment, which is an important subject? Well, if I could, I see my time's running out here. I'll respond to that question. I believe it's in the letter. If you read the letter that started all this, he makes reference he covers himself, fortunately, because he doesn't just reference the claims of these employees. He specifically states in that letter that they have expressed to me not only the claims that were the basis of your letter, but also other potential claims in the nature of employment discrimination and circumstances relating to failure of the employer to protect the employees from a dangerous workplace environment. The point of my question was, though, if he has a conflict, he doesn't have a constitutional right to make those assertions. Well, I don't think if he has a conflict, they can terminate him the way they did anyhow. I mean, I think they didn't know if he had a conflict. Batchelor thought so. But even after everything that has happened, he said in a declaration in January or February of 2005, he still believes it was a conflict. You see, that's the heart of the pickering problem, because you've got to toss the contract into the pickering mix, as well as everything else that we've been talking about. What else is he going to say when he's hired a replacement? He hired a replacement before he even addressed the Board of Supervisors with the issue. What do you expect him to say? How convenient for him to say, oh, I still believe it. Of course he still believes it. You know, if he said he didn't, we wouldn't be here again. This case would probably be resolved. So I just wanted to make a few comments, if I could, about the case. Time's up. We'll give you one more minute. Thank you very much. First of all, concerning the Fabiano case, Arkin didn't work in the same area as did the attorney in that case. Arkin worked exclusively for CPS. Arkin's legal skills had never come into question. There's no collateral issue that he might have been inept as a CPS litigator. In fact, when the agency was required to write the termination letter, they said they had to. They were compelled to do it. They didn't want to do it. And basically, there was one thing that never happened here. In Fabiano, they spoke to the employee and said, hey, look, we think you ought to stop doing this. We don't think this looks good. And if you read in our letters with the county when we were trying to renegotiate the contract, we said we're willing to stipulate to put in a clause that he won't take any position adverse to the county. And that's all different from Fabiano. We never had that chance. The employer, the supervisor, never came down to Arkin and said, you know, I don't think you should do this. Thank you. Thank you, Judge. Briefly, Your Honors, judges do occasionally make mistakes, which is why this Court is in business. And the fact that a county counsel disagreed with what I believe to be a very poorly reasoned decision doesn't constitutionally preclude him from giving advice to his client, the county, that you've got issues with this contract that you need to address. And it isn't, I think there clearly is no conflict. I mean, there clearly is a conflict that the Superior Court judge failed to address. But more importantly, it doesn't matter if the county counsel was wrong in that determination because the doctrine of qualified immunity protects against reasonable mistakes. And it is, as Judge Silverman, you ruled in Sorrells v. McKee, it is the plaintiff's burden of proof to show that the right was clearly established. The reference to the government code and the professional rules of practice clearly demonstrate that a reasonable person could conclude there was a conflict and that it was reasonable for the county counsel to be concerned that Mr. Arkin's conduct warranted termination and a recommendation to the board that they revisit his contract. Thank you.
judges: Reinhardt, Rymer, Silverman